**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS PLANO
DIVISION**

| | | |
|---|---|---|
| NELSON A. LOCKE § | | |
|    *Plaintiff*, § | | |
| § | | |
| v. § | Case No. | |
| § | | |
| § | | |
| CHICAGO AUTO PLACE, and § | | |
| ROBERT WEINBERG § | | |
|    *Defendants*. § | | |

**PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR RELIEF, AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES plaintiff, Nelson A. Locke, who complains of defendant(s) Chicago Auto Place, and Internet Sales Manager Robert Weinberg.  Whereas for each claim of action, plaintiff respectfully requests to show this court the following:

### I. PARTIES

Plaintiff, Nelson A. Locke, is an individual and a resident of Collin County, Texas at 4301 Rock Springs Dr. Plano TX 75024, and a citizen of The State of Texas.

Defendant, Chicago Auto Place, is a limited liability company that conducts its business at 768 Thomas Dr. Bensenville IL, 60106, and was formed in the State of Illinois.

Defendant, Robert Weinberg, is the Internet Sales Manager of Chicago Auto Place and an individual who resides or can be found in Lombard, Illinois, and is employed at Chicago Auto Place in Bensenville Illinois.

## II. VENUE AND JURISDICTION

Venue and Personal Jurisdiction are proper in the Eastern District of Texas because Collin County Texas is the place where all or a substantial part of the events leading to the causes of action have occurred. The Plaintiff has never been to Chicago for this purpose and the entire transaction was conducted electronically. All documents were signed in Texas.

Subject Matter Jurisdiction is proper in the Eastern District of Texas for the first cause of action because the first cause of action involves a federal question arising under Article III of the U.S. Constitution.  In the alternative, Subject Matter Jurisdiction is proper in the Eastern District of Texas because the parties are diverse by their residence in different jurisdictions (*see parties, above*) and Plaintiff claims in good faith that total damages may be greater than $75,000.

Supplemental Jurisdiction is proper in the Eastern District of Texas for the subsequent causes of action because though they may not qualify as federal questions, nor do they qualify under diversity of citizenship jurisdiction, the subsequent causes of action occurred under the same transaction of facts leading to the initial cause of action, and are thus supplemental to the primary cause of action.

## III. STATEMENT OF FACTS

On or about the 23rd of December, 2019, Plaintiff expressed interest in purchasing a 2005 Aston Martin DB9 (DB9) from Defendant Chicago Auto Place.  During that time, Plaintiff and Defendant Chicago Auto Place began communicating about the DB9 via Defendant Robert Weinberg who was employed as the Internet Sales Manager by Defendant Chicago Auto Place. As part of the communication, Defendant Robert Weinberg expressed his appreciation in Plaintiffs interest in purchasing the DB9.  Defendant Robert Weinberg also distributed several videos to Plaintiff as evidence of the cleanliness of the DB9.

Plaintiff inquired as to the condition of the DB9.  Defendant Chicago Auto Place, through

Defendant Robert Weinberg, advised the Plaintiff in writing that the car was exceptionally clean, and warranted to Plaintiff that the vehicle was in good working condition, there were no defects besides some paint chips on the driver's side arm rest, that the vehicle was properly serviced by Aston Martin and others, and that any issues were properly repaired.  A CARFAX vehicle history report was obtained by Defendant Chicago Auto Place on or about December 26, 2019 and delivered to Plaintiff.  The Defendant boasted of the clean CARFAX report. The CARFAX vehicle history report was provided solely as an incentive to the Plaintiff to buy, and for the Plaintiff to rely upon as certain evidence of proper maintenance confirming the implied and expressed warranties and assurances of Defendant Chicago Auto Place.

      On or about December 20th, 2019, Plaintiff subsequently agreed to purchase the DB9, and expressed agreement in purchasing the DB9 by signing a bill of sale for purchase.  As part of the purchase process, Plaintiff was required to make a down payment of $6,500 and a deposit of $1,000 for total payments of $7,500.  Plaintiff was provided a payment authorization form that detailed Plaintiffs payment information, a request to charge the $1,000 deposit, and a request for Plaintiff to sign.  Plaintiff never signed the payment authorization form; rather, Plaintiff delivered the unsigned payment authorization form with a cashier's check in the amount of $7,500 to Defendant Chicago Auto Place.  Defendant Chicago Auto Place cashed Plaintiffs check.  Defendant Chicago Auto Place also charged Plaintiffs credit card for $1,000 though the authorization form was not signed by Plaintiff.

      After reviewing the CARFAX vehicle history report on December 26th, 2019, Plaintiff asked Defendant Chicago Auto Place via Defendant Robert Weinberg if there were three keys and fobs as detailed on the report.  Defendant Chicago Auto Place via Defendant Robert Weinberg informed Plaintiff that additional keys and fobs would be recovered or obtained.  Subsequently Plaintiff received one additional key and fob, not two.

On or about December 31st, 2019, Plaintiff received an email from Defendant Chicago Auto Place regarding several documents that were available for Plaintiff to review. That email also provided shipping costs for enclosed and open transport shipping. Plaintiff elected for enclosed shipping, notified Defendant in writing with specific authority for enclosed shipping, and paid the enclosed shipping costs of $1200 on the 2nd of January, 2020, via wire transfer.

On or about January 7th, 2020, the DB9 arrived at Plaintiffs residence in Collin County Texas. Contrary to the expected shipping method, the DB9 arrived via open transport. When Plaintiff recognized that the shipping method was not as was elected, Plaintiff promptly requested a copy of the bill of lading. Both the Transport Driver and Defendant Chicago Auto Place failed to provide Plaintiff a copy of the bill of lading. Additionally, the DB9 did not include three keys and fobs as was reported in the CARFAX report that arrived with the DB9 initially. The vehicle arrived with one key and fob.

On or about January 8th, 2020, a day after the DB9 was delivered, the vehicle stopped working completely. Plaintiff immediately communicated to Defendant Chicago Auto Place via Defendant Robert Weinberg the issue of the DB9 not working. Plaintiff took a video of the car's computer messages and sent that to the Defendant, who never responded. On or about January 9th, 2020, Plaintiff towed the DB9 to Aston Martin of Dallas to have it diagnosed. On diagnosis, the technicians at Aston Martin of Dallas informed Plaintiff that contrary to the statements made by the Defendant about the CARFAX vehicle history report, the DB9 was not properly serviced and at least $14,000 worth of repairs were immediately necessary to get the car to function safely, and bring it up to standard.

The service technicians at Aston Martin of Dallas explained to Plaintiff that where the vehicle is properly serviced, records of service would be found in **1**: the dealers manual (stamped pages) and / or **2**: the Aston Martin dealership records electronically. Said technicians of Aston Martin of Dallas showed Plaintiff the dealership manual that was supplied with the DB9 which

had no service stamps in it - demonstrating a lack of service on the vehicle.  Additionally, said technician examined the Aston Martin records of the  DB9 via the Aston Martin Dealership system, and informed Plaintiff that there was no record of service on the DB9 in the Aston Martin Dealership.  The only thing found was a detailed inspection report, not made available to either the Plaintiff or the Dallas Aston Martin dealer, hidden from the Dallas dealer, that upon investigation likely showed the same defects the Plaintiff encountered when the car failed to operate. Most importantly, said Dallas Aston Martin technician also informed Plaintiff that Defendant Chicago Auto Place would have known about the lack of service on the DB9 based on the manual, and that Defendant Chicago Auto Place would also have access to the same dealership service records electronically as the prior owner to the Plaintiff.

The service technician at Aston Martin of Dallas then performed a complete diagnosis on the DB9, and then informed Plaintiff of severe malfunctions and potential damage to the DB9 that would render the vehicle undrivable unless repaired.  Said technician also informed Plaintiff that the total repairs would cost at least $14,000. On January 14th, Plaintiff advised Defendant of Plaintiff's Dispute and Intent to Sue by US mail and e-mail. When Defendant ignored the demand letter, Plaintiff had it served once again on January 28th and has proper proof of service.

## IV. CAUSES OF ACTION

**A:  Federal Unfair Deceptive or Acts or Practices (UDAP)**:

Federal law dictates that acts or practices that are deceptive and / or unfair are prohibited where those acts affect commerce *15 U.S.C. § 45*.  Acts could be considered deceptive when **1**: a representation, omission, or practice misleads or is more than likely to mislead the consumer, **2**: a consumers interpretation of the representation, omission, or practice is considered reasonable under the circumstances, and **3**: the misleading representation, omission, or practice is material.

5

Here, Defendant Chicago Auto Place and Defendant Robert Weinberg represented that the DB9 was in good working condition, there were no defects, the vehicle was properly serviced by Aston Martin and others, and implied that any issues discovered had been properly repaired.  Furthermore, Defendant Chicago Auto Place through Defendant Robert Weinberg obtained a CARFAX vehicle history report to support their warranty of functionality of the DB9; however, Defendant Chicago Auto Place and Defendant Robert Weinberg were deceptive in that Chicago Auto Place and Defendant Robert Weinberg did not disclose that there was a lack of service according to the Aston Martin dealership records.  Those failures to act constructively constitute an omission because Plaintiff did not have all of the information that Defendant Chicago Auto Place and Defendant Robert Weinberg had access to in order to make an informed decision to purchase the D89.  Had all of the information that Defendant Chicago Auto Place and Defendant Robert Weinberg had access to been disclosed to Plaintiff, Plaintiff more likely than not would have elected not to purchase the DB9.

Such acts by Defendant Chicago Auto Place and Defendant Robert Weinberg effect commerce since the acts involve the selling and trading of automobiles.  In the case at bar, the questionable actions involve the sales transaction of the DB9 to plaintiff.  Such acts by Defendant Chicago Auto Place and Defendant Robert Weinberg also caused damage to Plaintiff due to the repairs that are required to make the DB9 drivable.  Those damages are substantial in that Plaintiff has had to and continues to have to expend enormous sums of money for the repairs.  For all of those reasons, plaintiff brings a claim against Defendant Chicago Auto Place and Defendant Robert Weinberg based on federal UDAP statutes.

**B:  Texas Deceptive Trade Practices Act (DTPA)**:

DTPA claims may be initiated if it can be established that **1**: Plaintiff is a consumer, **2**:

the defendants engaged in deceptive, false, or misleading acts, or the defendants engaged in unconscionable acts or course of action, and **3**: the defendants actions caused harm to the plaintiff  *Doe v Boys Club of Greater Dallas Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

      Deceptive acts can include causing confusion or misunderstanding regarding the source, sponsorship, approval, or certification of goods or services *Tex. Bus. and Prof. Code Ann.* § 17.46 (b)(2).  Furthermore, representing that goods or services are one standard, quality, grade,

or certain style, when they are actually of another *Tex. Bus. and Prof. Code Ann.* § 17.46 (b)(7). These acts may also include making false or misleading statements of fact regarding the need for parts, replacement, or repair service *Tex. Bus. and Prof. Code Ann.* § 17.46 (b)(13).  Additional acts that could be deemed deceptive include not disclosing information relating to goods or services which was known at the time of the transaction if not disclosing the information was designed to induce the consumer into a transaction that the consumer would have not engaged had the consumer received the undisclosed information  *Tex. Bus. and Prof. Code Ann.* § 17.46 (b)(24).

     Here, Plaintiff is clearly a consumer since Plaintiff purchased the DB9 for his personal use.  Defendant Chicago Auto Place and Defendant Robert Weinberg represented that the DB9 was in good working condition, there were no defects, the vehicle was properly serviced by Aston Martin and others, and that any issues were properly repaired.  Furthermore, Defendant Chicago Auto Place through Defendant Robert Weinberg obtained a CARFAX vehicle history report to support their warranty of functionality of the DB9; however, Defendant Chicago Auto Place and Defendant Robert Weinberg were deceptive in that they neither disclosed nor explained that the dealer manual included with the DB9 did not have a record of service.  Furthermore, Defendant Chicago Auto Place and Defendant Robert Weinberg were deceptive when they did not disclose that there was a lack of service according to the Aston Martin dealership records.  Those failures to act constructively constitute an omission because Plaintiff did not have all of the information that Defendant Chicago Auto Place and Defendant Robert Weinberg had access to in order to make an informed decision to purchase the D89.  Those activities harmed Plaintiff because the DB9 didn't drive.  Furthermore, Plaintiff incurred additional expenses in towing the DB9 to the Aston Martin Dealership and in the unexpected costs of repair due to the lack of maintenance on the DB9.   For all of those reasons, plaintiff brings a claim against Defendant Chicago Auto

Place and Defendant Robert Weinberg based on Texas DTPA statutes.

1:  Economic Damages:

Plaintiff has the right to initiate a cause of action where **1**: a false, misleading or deceptive act or practice that a consumer relies on to their detriment *Tex. Bus. and Prof. Code Ann.* § 17.50 (a)(1)(B), **2**: there is a breach of express or implied warranty *Tex. Bus. and Prof. Code Ann.* § 17.50 (a)(2), or **3**: there is an unconscionable act or course of action by a person *Tex. Bus. and Prof. Code Ann.* § 17.50 (a)(3).  Furthermore, a Plaintiff who prevails in the cause of action is entitled to the amount of economic damages that a trier of fact determines to have occurred *Tex. Bus. and Prof. Code Ann.* § 17.50 (b)(1).  If it is determined that the act was committed knowingly or intentionally, the Plaintiff is entitled to recover the amount of damages for mental anguish as determined by the trier of fact, as well as up three times the amount of economic damages as determined by the trier of fact *Id*.

Here, Plaintiff initiates the petition for economic damages deemed appropriate under this subsection because **1**: Defendants Chicago Auto Place and Robert Weinberg committed a misleading act in which Plaintiff relied to his detriment, and **2**: there was a breach of express or implied warranty.

Defendants Chicago Auto Place and Robert Weinberg were deceptive in that though they provided a CARFAX vehicle history report, they neither disclosed nor explained to Plaintiff that the dealer manual included with the DB9 did not have a record of service.  Furthermore, Defendant Chicago Auto Place and Defendant Robert Weinberg were deceptive when they did not disclose that there was a lack of proper service record according to the Aston Martin dealership records. Defendant specifically told Plaintiff that there was a green box in the trunk, with records of all the required service. There was no such green box. The box contained a air pump to inflate tires.  Plaintiff relied on this deception to his detriment because he did not receive a totality of the

9

historic records of the car, which he could have used to make a more informed decision as to whether or not to purchase the DB9.  Chances are more likely than not that Plaintiff would not have purchased the DB9 had he been made aware of a lack of service records or actual proper service in the service manuals and in the Aston Martin Dealership records.

Defendants Chicago Auto Place and Robert Weinberg also committed a breach of implied or expressed warranty in that when Defendant Chicago Auto Place via Defendant Robert Weinberg warranted to Plaintiff that the vehicle was in good working condition, there were no defects, the vehicle was properly serviced by Aston Martin, and that any issues were properly repaired.  However, the inverse is correct.  The day after the DB9 arrived at Plaintiffs residence, the vehicle stopped working.  Plaintiff had to have the DB9 towed to Aston Martin of Dallas, where Plaintiff was informed of all of the issues with the DB9 that needed to be cured before the DB9 could be drivable again.  The issues pointed out by the technicians at Aston Martin of Dallas were such that Defendants Chicago Auto Place and Robert Weinberg knew or should have known of the defects, yet the DB9 was presented as being free from defects and in good working condition.

For the above-mentioned reasons, Plaintiff initiates this petition in request for economic damages.  Furthermore, because Defendant Chicago Auto Place and Robert Weinberg knew yet misrepresented the condition of the DB9 when it was sold to Plaintiff, Plaintiff initiates this cause of action in request for triple the amount of economic damages to be determined.

**C:  Trespass / Conversion of Chattels**:

A claim for trespass of chattels may be initiated if it can be established that there is an injury or interference to personal property *Mountain States Tel. & Tel. Co. v Vowell Constr. Co.*, 341 S.W.2d 148, 150 (Tex. 1960).  The injury or interference to property can be done with or without force *Id*.  Trespass to chattels may occur whenever the property is completely destroyed, regardless of whether or not the destruction occurred as an act of negligence *Id*.  A person is

liable for damages because of the trespass if 1: there is actual damage to the chattel, or 2: the rightful owner of the property is deprived from use of the chattel for a substantial period of time *Lyle v. Waddle*, 188 S.W.2d 770 (Tex. 1945).

      Here, deprivation of property occurred in three instances.  First, the DB9 was warranted to include three sets of keys and fobs.  Furthermore, Defendant Chicago Auto Place via Defendant Robert Weinberg told Plaintiff that additional keys and fobs would be located or fabricated.  That was not done.  Secondly, Plaintiff paid $6,500 as a down payment and $1,000 as a deposit via personal check that in the amount of $7,500.  However, Defendant Chicago Auto Place charged Plaintiffs credit card in the amount of $1,000, though Plaintiff had already tendered payment via personal check which was cashed and never provided written permission to use the credit card.  Finally, trespass occurred when Plaintiff paid for the costs of transporting the DB9 from the dealership via closed container shipping, yet the vehicle was shipped via open air shipping.  Had Plaintiff elected open air shipping, the cost would have been $750.  The choice that plaintiff actually elected was in the amount of $1,200.   However, the Defendant provided the $750 service but charged the Plaintiff $1,200.

      Each act deprived Plaintiff of the use of the property because 1: Plaintiff does not have access to the additional key and fob as he was warranted to receive from Defendant Chicago Auto Place.  This is an added expense as Plaintiff would have to procure an additional key and fob as replacements for emergence purposes.  Furthermore, Plaintiff is deprived of money and / or available credit which could be used for other purposes.  Finally, Plaintiff paying the costs of closed container shipping yet receiving the DB9 via open air shipping deprived Plaintiff of his property: to-wit $450.

For these reasons, Plaintiff initiates a cause of action for trespass to chattels.

**D:  Breach of Duty of Good Faith and Fair Dealing**:

11

On the formation of a contract, a special relationship arises between the contracting parties where the contracting parties have a duty of good faith and fair dealing during the transaction *Viles v. Security Nat'l Ins. Co.* 788 S.W.2d 566, 567 (Tex. 1990). Where that duty is breached, a cause of action in tort may be brought *Id*.

Here, it is clear that an agreement was formed between Plaintiff and Defendants Chicago Auto Place and Robert Weinberg for the sale and purchase of the DB9 the moment that Plaintiff sent payment via check in the amount of $7,500, and the aforementioned defendants accepted the payment by cashing Plaintiffs check. $6,500 of that payment was for the down payment for the DB9, and $1.000 was for the deposit required for purchase of the vehicle. As such, Defendants Chicago Auto Place and Robert Weinberg had a duty to ensure that 1: the DB9 was in working condition as they had warranted to Plaintiff, and 2: that Plaintiff received the items that were included with the DB9: specifically, the replacement keys and fobs.

The Defendants breached this duty because they constructively knew that the DB9 was not in working condition, failed to disclose the issues of the DB9 to Plaintiff, and failed to disclose the lack of record of service as would normally be stamped in the dealers manual, as well as with the Aston Martin service network. Based on these facts, Plaintiff brings a cause of action for breach of the duty of good faith and fair dealing.

**E:  Breach of Contract**:

A cause of action can be brought for breach of contract if it can be established that 1: there was a validly formed agreement, 2: performance or ability of performance by the plaintiff, 3: material breach by the defendant, and 4: damages as a result of the breach of the agreement *Paragon Gen. Contractors Inc. v Larco Constr. Inc.*, 227 S.W.3d 876,882 (Tex. App – El Paso 1994, *writ denied*).

Here, as mentioned previously, a contract was formed between Plaintiff and Defendant Chicago Auto Place via Defendant Robert Weinberg for the sale and purchase of the DB9 the

moment that Plaintiff sent payment via check in the amount of $7,500, and the aforementioned defendants accepted the payment by cashing Plaintiffs check.  $6,500 of that payment was for the down payment for the DB9, and $1.000 was for the deposit required for purchase of the vehicle.  That is indicative of Plaintiff offering to purchase the DB9 and Defendant Chicago Auto Place accepting Plaintiffs offer.  Furthermore, Plaintiff tendering a deposit in the amount of $1,000 plus the down payment of $6,500 demonstrates Plaintiffs ability to perform by tendering payment of the purchase price of the DB9 via either securing financing, or via tendering full payment personally.

The breach of agreement occurred when Defendant Chicago Auto Place through Defendant Robert Weinberg misrepresented the condition of the DB9.  Defendant Chicago Auto Place through Defendant Robert Weinberg warranted that the DB9 was in good working condition, there were no defects, the vehicle was properly serviced by Aston Martin, and that any issues were properly repaired.  To the contrary, there were issues that were not repaired that made the DB9 undriveable.  Furthermore, Defendant Chicago Auto Place through Defendant Robert Weinberg concealed the aforementioned facts by providing a CARFAX vehicle history report yet failed to mention that no service record existed in the service manual or in the Aston Martin systems.

As a result of the breach, Plaintiff suffered thousands of dollars in damage in transport of the vehicle, and in repairs to the DB9 that are crucial to insure that the vehicle is drivable.

### V.  DAMAGES

As an actual and proximate cause of the actions of the aforementioned defendant(s), the plaintiff suffered the following pecuniary and non-pecuniary damages stated below:

    A:    The cost of towing and repairs to the DB9.

    B:    The cost of replacement keys and fobs.

    C:    Reimbursements plus interest for the unauthorized credit card charges.

    D:    Other economic damages as deemed appropriate.

 E:  Damages for anguish as deemed appropriate.

## VI.  PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, plaintiff respectfully requests the following;

Plaintiff requests compensatory and punitive damages awarded to plaintiff against defendant upon final trial, pre and post judgment interest as allowed by law, court and legal expenses, and any other relief in which plaintiff may legally be entitled to.

Plaintiff respectfully demands a trial by jury.

             Respectfully Submitted

             _____
             Nelson A. Locke
             PLAINTIFF PRO SE
             CA BAR #293842
             Locke Law US L.L.C.
             7800 Preston Rd. Ste. 118
             Plano TX, 75024
             Phone: (800)-656-4584
             Email: nl@lockelaw.us